IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHLEEN FORTE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 14-5004** |
| **BED BATH & BEYOND, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM

**Tucker, C.J.**                                                                                                   **March 21, 2016**

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. 16), Plaintiff's Response in Opposition (Doc. 18), and Defendant's Reply to Plaintiff's Response in Opposition (Doc. 22). Upon consideration of the parties' submissions and exhibits and for the reasons set forth below, this Court DENIES Defendant's Motion.

**I.      FACTUAL BACKGROUND**

In her Amended Complaint, Plaintiff Kathleen Forte ("Plaintiff" or "Forte") alleges that Defendant Bed Bath & Beyond, Inc. ("Defendant" or "Bed Bath & Beyond") was negligent in maintaining its retail store located at 1261 Knapp Road, North Wales, Pennsylvania. The undisputed material facts follow.

On July 22, 2013, at approximately 4:30 PM, Plaintiff entered Bed Bath & Beyond. Def. Mot. for Summ. J. at 3, Doc. 16; Pl. Resp., Exh. B at 23, Doc. 18. Upon entering the store, Plaintiff went to the back of the store to look at dishtowels. During Plaintiff's walk from the entrance of the store to the back of the store where the dishtowels are located, she did not

1

observe any water on the floor. After Plaintiff selected dishtowels to purchase, she exited the aisle and her right foot slid in water.

Prior to slipping, Plaintiff did not observe any water on the floor. After she slipped, however, Plaintiff noticed "'a good bit' of water on the floor" that measured about ten feet. Def. Mot. for Summ. J. at 3 (quoting Def. Mot. for Summ. J., Exh. B, at 11, Doc. 16). Plaintiff testified that the water was clear. Plaintiff further testified that she did not see footprints in the water and that she believed there was one cart mark in the water but she was uncertain of when that cart mark was formed.

Though Plaintiff was not present when the water got on the floor, she estimated that the water had been on the floor "for 'a long time'" because approximately half of the ten feet of the water had evaporated. *Id.* at 4 (quoting Def. Mot. for Summ. J., Exh. B, at 13). Plaintiff believed half of the water evaporated because the water on the floor was "'streaky'" and "'looked dry in certain areas.'" *Id.* (quoting Def. Mot. for Summ. J., Exh. B, at 12). Plaintiff did not observe where the water originated and testified that she did not notice anything in the store that used water or that was for sale that contained water.

Shortly after Plaintiff fell, the manager on duty, Thomas Bowes ("Bowes") came over to Plaintiff. As part of his managerial duties, Bowes was in charge of conducting walkthroughs of the sales floor "to maintain customer service and safety, ensure the employees are working in a safe fashion, make sure the aisles are uncluttered, assess whether there is anything dangerous overhead, and determine if there are any hazardous conditions on the floor." *Id.* at 5. Bowes conducted a walkthrough of the sales floor approximately thirty minutes prior to Plaintiff's fall.

Bowes inspected the area where Plaintiff fell and only "observed two (2) water drops on the floor." *Id.*[1]  Like Plaintiff, Bowes could not determine the source of the water.

In addition to the above-mentioned undisputed facts, Plaintiff also alleges that "Defendant, a retail store, houses many liquid products."  Pl. Resp. at 10, Doc. 18.  Plaintiff also maintains that on the date of the incident, Bowes and seven other employees were on duty.  *Id.* at 11.  During Bowes' shift, he was required to walk the floor which "takes approximately ten minutes and . . . is supposed to be 'continual.'"  *Id.* at 12 (emphasis omitted) (quoting Pl. Resp., Exh. D at 110, Doc. 18).  However, "[t]here are no records or logs kept that track the 'walks' or confirm the walks actually took place. . . . [and no] record of when [Defendant's employees] encounter [hazards] on the floor."  *Id.* (quoting Pl. Resp., Exh. D at 105–13).

Plaintiff avers that as Plaintiff slipped and fell on the wood in the main aisle, she "grabbed on an adjacent display, her right leg went forward and her left leg twisted back into a splitting position."  *Id.*  After Plaintiff fell, "a young male employee returned . . . to wipe the area."  *Id.* at 12–13.  At some point, an employee alerted Bowes that Plaintiff had slipped and fallen.  *Id.* at 13.  Bowes was uncertain as to "how much time elapsed between the fall and when he was alerted."  *Id.*  Bowes was also uncertain as to whether "anyone had cleaned the spill prior to his arrival."  *Id.*  Bowes did not investigate how the floor became wet.  *Id.*  Additionally, Bowes "did not have a 'specific recollection' that he 'had been [in] the area within a half hour prior to the fall.'"  *Id.* at 14 (emphasis omitted) (quoting Pl. Resp., Exh. D at 117–18).[2]

---

[1] Though Defendant frames the size of the spill as an undisputed fact, Plaintiff's testimony that the spill was approximately ten feet and Bowes' testimony that the spill was approximately two drops of water is expressly contradictory.

[2] Plaintiff mischaracterizes Bowes' testimony.  Plaintiff's counsel asked Bowes whether he "had a specific recollection of what [he] was doing 30 minutes before her fall."  Pl. Response, Exh. D at 117, Doc. 18.  Bowes responded that he did not.  *Id.*  Bowes was then asked whether he had "a specific recollection of the last time [he] had been to the area of her fall prior to her fall."  *Id.*  Bowes then responded that he "had been through that area within a half an hour at that time."  *Id.* at 117–18.

As a result of the slip and fall, Plaintiff suffered "immediate pain in her groin, back, and shoulder." *Id.* Plaintiff was then "transported to Lansdale Hospital." *Id.* After undergoing additional testing, Plaintiff was diagnosed with "tearing of her gluteus minimus/medius, degenerative disease, trochanteric bursitis, and degenerative arthritis of the right hip." *Id.* In August 2015 Plaintiff underwent hip replacement surgery because previous conservative treatment methods failed. *Id.*

## II.   PROCEDURAL HISTORY

On August 1, 2014, Plaintiff filed her Complaint in the Philadelphia County Court of Common Pleas. Doc. 1, Exh. A. On August 27, 2014, Defendant removed the matter from the Court of Common Pleas to this Court. Doc. 1. Plaintiff subsequently amended her Complaint on September 4, 2014 (the "Amended Complaint"). Doc. 3. On January 8, 2016, Defendant filed the instant Motion for Summary Judgment. Doc. 16. The matter is currently scheduled for an arbitration hearing on March 28, 2016. Doc. 20.

## III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, courts shall grant summary judgment in favor of the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250).

---

Plaintiff's counsel then asked Bowes if he had "a specific recollection of that" to which he responded in the affirmative. *Id.* at 118.

The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). If the movant can sustain its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a *genuine issue for trial.*'" *Id.* (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When assessing the motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party." *Id.* Nonetheless, the court must be mindful that, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

In her Amended Complaint, Plaintiff alleges her injuries were the result of Defendant's negligence. Doc. 3. This Court has subject matter jurisdiction over the instant case because Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of New Jersey, and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332; Doc. 3 at 2. Since "[a] federal court sitting in diversity applies the choice-of-law rules of the forum state . . . to determine the controlling law[,]" this Court will apply Pennsylvania law. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). In Pennsylvania, a negligence action "requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).

The parties do not dispute that Plaintiff was a business invitee. *See* Def. Mot. for Summ. J. at 15; Pl. Resp. at 16. Accordingly, "'[t]he duty owed to a business invitee is the highest duty

5

owed to any entrant upon land' and Defendant was 'under an affirmative duty to protect [Plaintiff] not only against known dangers but also against those which might be discovered with reasonable care.'" *Truax v. Roulhac*, 126 A.3d 991, 997 (Pa. Super. Ct. 2015) (quoting *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 253 (Pa. Super. Ct. 2014)). The Court will determine "the particular duty owed to a business invitee . . . on a case-by-case basis." *Campisi v. Acme Mkts., Inc.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006). However, "[i]n determining the scope of duty property owners owe to business invitees, [courts in Pennsylvania] have relied on Restatement (Second) of Torts § 343." *Id.* According to § 343,

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343.

While "'[i]t is unquestionable that a store owner owes a duty of care to the patrons of the store'" it is also true that "'the owner of the store is not an insurer of the safety of its customers.'" *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1195 (Pa. Super. Ct. 2015) (quoting *Myers v. Penn Traffic Co.*, 606 A.3d 926, 928 (Pa. Super. Ct. 1992)). The onus is on Plaintiff, as an invitee, to "present evidence proving that the proprietor deviated from the duty of reasonable care that it owed in the circumstances, *i.e.,* that the proprietor knew or in the exercise of reasonable care should have known of the harmful condition." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001) (citation omitted). Accordingly,

> [t]his evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store

> owner helped to create the harmful condition, or that it had actual or constructive notice of the condition.

*Rodriguez*, 111 A.3d at 1193 (quoting *Zito v. Merit Outlet Stores*, 647 A.3d 573, 575 (Pa. Super. Ct. 1994)).  Because Defendant neither helped to create the spill nor had actual notice of the spill, the Court must determine whether Defendant had constructive notice of the spill.

In assessing whether an owner had constructive notice of a harmful condition, "[c]ourts rely on a multitude of factors . . . including: 'the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it.'"  *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011) (quoting *Hagan v. Caldor Dep't Stores, Inc.*, No. 89–7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991)).  In addition to the above-mentioned factors, courts evaluate "the time elapsing between the origin of the defect and the accident" and "the size and physical condition of the premises."  *Slater v. Genuardi's Family Mkts.*, Civil Action No. 13–794, 2014 WL 4763336, at *3 (E.D. Pa. Sept. 24, 2014).  Lastly, courts also evaluate "the nature of the business conducted" on the property.  *Baynes v. The Home Depot U.S.A., Inc.*, Civil Action No. 09–3686, 2011 WL 2313658, at *7 (E.D. Pa. June 9, 2011).

In general, "the 'evaluation of these factors is within the province of the jury.'"  *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) (quoting *Hagan*, 1991 WL 8429, at *4).  The question of constructive notice "may be decided by the court only when reasonable minds could not differ as to the conclusion."  *Commonwealth of Pa., Dep't of Transp. v. Patton*, 686 A.2d 1302, 1305 (Pa. 1997).  The Court must make the decision if "the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion.'"  *Craig*, 555 F. Supp. 2d at 550 (quoting *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)).  Nevertheless "[i]f

7

there is any dispute created by the evidence, the court is not permitted to decide the issue." *Patton*, 686 A.2d at 1305.   In *Commonwealth of Pennsylvania, Department of Transportation v. Patton*, the court concluded that "[t]he question of constructive notice was a major issue . . . and there was substantial conflicting evidence on the issue." *Id.*  The court ultimately determined that the question of constructive notice "was therefore not a question to be decided by the court, but [one that] should have been submitted to the jury." *Id.* at 1306.  Accordingly, this Court will assess whether Defendant had constructive notice and therefore should have known of the spill.

   A.  *Duration of the Spill*

Though courts rely on numerous factors to determine whether a defendant had constructive notice of a harmful condition, "'[o]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident.'" *Felix*, 827 F. Supp. 2d at 437 (quoting *Neve*, 771 A.2d at 791).  This factor is particularly critical "because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 343).  Therefore, in order for Plaintiff to establish that Defendant had constructive notice of the spill, she "must generally prove that an alleged hazardous condition existed for such a length of time as to suggest that, with the exercise of reasonable care, a landowner should have known of it and remedied the problem." *Viccharelli v. Home Depot U.S.A., Inc.*, Civil Action No. 06-4890, 2007 WL 4276657, at *2 (E.D. Pa. Dec. 4, 2007) (footnote omitted) (quoting *Brandenstein v. Great Atl. & Pac. Tea Co.*, 275 F.2d 725, 726 (3d Cir. 1960)).   In some cases, a plaintiff may introduce evidence of "footprints or 'tracking' through and around the area of spill." *Evans v. Canteen Corp.*, No. Civ. A. 94–2381,

1995 WL 355231, at *2 (E.D. Pa. June 13, 1995).  This evidence is particularly useful because it can be an indication that "the spilled substance has been present long enough to give the proprietor constructive knowledge of its presence." *Id.*; *see also Hower v. Wal-Mart Stores, Inc.*, Civil Action No. 08–1736, 2009 WL 1688474, at *4 (E.D. Pa. June 16, 2009).  Nevertheless, "[a]bsent evidence of the duration of time a spill remained on the floor prior to an accident, courts interpreting Pennsylvania law have granted summary judgment to the defendant and made clear that constructive notice of the spill cannot be inferred." *Hower*, 2009 WL 1688474, at *4.

Plaintiff argues that "it can be reasonably inferred [that] the water was on the floor for at least the time period Plaintiff was looking for the dishtowels." Pl. Resp. at 20.  In contrast, Defendant contends that "Plaintiff has not presented any evidence that Defendant had constructive notice of the water on the floor, therefore summary judgment is appropriate."  Def. Mot. for Summ. J. at 17 (emphasis omitted).  Defendant relies on *Viccharelli v. Home Depot U.S.A., Inc.* and *Felix v. GMS, Zallie Holdings, Inc.*, to support its argument that this Court should grant its motion for summary judgment.

In *Viccharelli v. Home Depot U.S.A., Inc.*, the plaintiff brought a negligence action against Home Depot because "[w]hile [she was] in the checkout line . . . [she] stepped in a slippery wet substance [which] caus[ed] her to fall and sustain injuries to multiple parts of her body." 2007 WL 4276657, at *1.  The district court granted Home Depot's motion for summary judgment.  *Viccharelli*, 2007 WL 4276657, at *1.  The court rejected the plaintiff's argument that "'skid marks' observed by the defendant in the wet substance after she fell suggest[ed] 'customer traffic' for an 'extended period of time.'" *Id.* at *2.  The court reasoned that "the presence of 'skid marks' suggests only that something had been pushed through the wet substance at one point in the past." *Id.*  The presence of skid marks "does not suggest, however, that the wet

9

substance had been present for any length of time, much less that Home Depot personnel should have noticed it upon reasonable inspection." *Id.* Defendant argues that the instant case is similar to *Viccharelli* because "[l]ike in [*Viccharelli*], the presence of the alleged splattered, streaky pattern of the water, as well as the water's appearance, suggests *only* that this is the way the water fell at some point in the past." Def. Mot. for Summ. J. at 18. Defendant maintains that this "***does not suggest*** that the water had been present for any length of time and that Defendant had constructive notice of the water." *Id.*

The Court disagrees. The facts in the instant case are distinguishable to those in *Viccharelli*. In *Viccharelli*, the court granted the defendant's motion for summary judgment because "Viccharelli's entire argument [was] that 'skid marks' observed by the defendant in the wet substance after she fell suggest[ed] 'customer traffic' for an 'extended period of time.'" *Viccharelli*, 2007 WL 4276657, at *2. That court reasoned that the evidence of skid marks did not make duration of the hazard more likely. *Id.* In the instant case, however, Plaintiff does not solely rely on the presence of "one" cart mark. Pl. Resp., Exh. B at 38–39. Rather, Plaintiff also contends that Defendant should have had constructive notice of the spill because there was approximately ten feet of water "splattered" on the ground. *Id.* at 38. Additionally, Plaintiff maintains that the water was "streaky"[3] and that "[i]t looked like people walked through" the water and some of the water "was dry." *Id.* at 32. Thus, unlike the plaintiff in *Vicharrelli* who solely relied on evidence of skid marks to support a claim of duration of the hazard, Plaintiff relies on (1) the "streaky" and "evaporated" appearance of the spill, (2) Bowes' testimony that he "had been through [the area where Plaintiff fell] within a half an hour" prior to the fall, *and* (3) the cart mark. Pl. Resp., Exh. D at 117–18.

---

[3] Plaintiff defined "streaky" as the appearance something has when it "spills and it just runs." Pl. Resp., Exh. B at 33.

Defendant also relies on *Felix v. GMS, Zallie Holdings, Inc.*, where the plaintiff brought a negligence suit against the defendants after sustaining injuries from "a fall in the frozen food section of a grocery store." 827 F. Supp. 2d at 433. The plaintiff "entered a store aisle, which contained a freezer section, and without noticing a puddle of liquid on the floor, slipped and fell onto her back." *Felix*, 827 F. Supp. 2d at 434. After the plaintiff fell, she "observed that the substance she slipped on was a puddle of clear liquid, approximately one-quarter to one-half inch deep with several dust particles floating on its surface. . . . [however she] did not know how long the liquid had been on the floor, nor could she identify the source of the liquid." *Id.* One of the arguments that the plaintiff presented was that the evidence of tracking in the puddle on the floor supported her argument that the puddle was on the floor for a significant amount of time such that the defendant had constructive notice of the puddle. *Id.* at 439–40. The court found this argument unpersuasive in this case because there was "no indication as to when this footprint was made. . . . [therefore] [w]ithout some indication that the tracking occurred before Plaintiff fell, the jury could not discern whether this footprint was caused by another person before Plaintiff's fall, someone responding to Plaintiff's fall, or Plaintiff's fall itself." *Id.* at 440. The court ultimately granted summary judgment in favor of defendant because the plaintiff's evidence only demonstrated "that a liquid substance was spilled in ShopRite, and that the spill existed for some indeterminate time before she slipped on it. . . . [thus,] [t]here [was] no evidence of the duration of time that the spill existed." *Id.* at 442. The court reasoned that "in the absence of evidence, the jury can only guess how long the hazardous condition existed before Plaintiff slipped on this condition." *Id.* at 443.

Moreover, the facts in *Felix* are dissimilar to those in the instant case. In *Felix*, the plaintiff slipped on a puddle of liquid located in the freezer section of the grocery store. *Id.* at

11

434. The court found that there was insufficient evidence to "support [the plaintiff's] assertion that the liquid Plaintiff slipped on was present for a duration sufficient to provide Defendants with constructive notice." *Id.* at 437–44. The court concluded that because the plaintiff's "evidence [had] shown only that a liquid substance was spilled in ShopRite, and that the spill existed for some indeterminate time before she slipped on it" that there was "no evidence of duration of the time that the spill existed." *Id.* at 442. In the present case, however, Plaintiff alleges that she slipped in a ten foot puddle and half of it appeared to have evaporated. Pl. Resp., Exh. B at 33. Plaintiff further testified that the water appeared to "look[] dry in certain areas." *Id.* at 32. Thus in the present case, unlike in *Felix* where it was certain that Plaintiff fell and lacked evidence to support a claim of duration of the hazard, there are genuine issues of material fact concerning the appearance of the spill. Plaintiff claims that the floor appeared to be dry in certain areas which suggests that the water remained on the floor for a significant amount of time. In *Felix* the jury would have been forced to "render a verdict based on 'conjecture, guess, or suspicion.'" *Felix*, 827 F.2d at 443 (quoting *Lanni*, 88 A.2d at 889). In the instant matter, however, there are clear disputes concerning the evidence, thereby necessitating the jury, as fact-finders, to resolve the issue. *See Patton*, 686 A.2d at 1305.

      The present case is more analogous to *Hagan v. Caldor Department Stores, Inc.*, in which the plaintiff brought an action against the defendant for injuries he sustained after "he slipped on a liquid substance" at the department store. 1991 WL 8429, at *1. The defendant argued that the court should grant summary judgment in favor of the defendant because the plaintiff could not "establish that Caldor had actual or constructive knowledge of [the] condition on the floor [that] allegedly induced Hagan's injuries." *Hagan*, 1991 WL 8429, at *3. The court denied summary judgment because there were "questions as [to] whether this incident was the result of lack of

12

proper inspection, whether the dangerous condition could have been disclosed upon a reasonable inspection and whether the owner of the premises could have exercised reasonable care in preventing the injury, [which] are questions properly reserved for the jury unless the facts are such that there is no room for doubt." *Id.* at 5.

In the instant action, there are genuine issues of material facts concerning the size and the appearance of the spill. As mentioned above, the parties are vastly apart in their characterizations of the size of the spill. Plaintiff maintains that the spill was approximately ten feet of water, half of which appeared evaporated, while Bowes testified that he only saw two drops of water. The size and appearance of the hazard is crucial to the determination of whether the spill "existed for such a length of time as to suggest that, with the exercise of reasonable care, a landowner should have known of it and remedied the problem." *Viccharelli*, 2007 WL 4276657, at *2 (quoting *Brandenstein*, 275 F.2d at 726). There is "substantial conflicting evidence" on the issues of duration of the spill and thus constructive notice, and therefore it is inappropriate for the Court to render a decision because the question of constructive notice "may be decided by the court only when reasonable minds could not differ as to the conclusion." *Patton*, 686 A.2d at 1305.

## V.     CONCLUSION

For the reasons explained herein, this Court concludes that there is a genuine issue of material fact as to whether Defendant, in the exercise of reasonable care, should have known of the spill. Accordingly, this Court DENIES Defendant's motion for summary judgment. An appropriate order follows.